IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILLIAM A. HAWKINS | * | |
| | * | |
| v. | * | Case No.: 09-CV-01122-JFM |
| | * | |
| CITICORP CREDIT SERVICES, INC. | * | |
| and | * | |
| MARGOLIS, PRITZKER, EPSTEIN | * | |
| & BLATT, P.A., | * | |
| | **** | |

MEMORANDUM

William A. Hawkins, on behalf of himself and a class of similarly situated persons, sued Citicorp Credit Services, Inc. and Margolis, Pritzker, Epstein & Blatt, P.A. Both Defendants have filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Both motions are granted.

Citicorp Credit Services, Inc. also has filed a motion to impose Rule 11 sanctions against William A. Hawkins and his counsel, Jason A. Ostendorf, for asserting claims that were unwarranted under existing law and had no chance of success. The motion is denied.

I.

In a prior action, Citibank (South Dakota) NA ("Citibank SD")—a wholly owned subsidiary of Citigroup, Inc.—sued William A. Hawkins ("Hawkins") in the District Court for Baltimore City to recover an unpaid debt Hawkins incurred using a credit card issued by Citibank SD and subject to a cardholder agreement. (Am. Complaint ¶ 16.) Citicorp Credit Services, Inc. ("CCSI"), also a wholly owned subsidiary of Citigroup, and the law firm of

Margolis, Pritzker, Epstein & Blatt, P.A. ("MPEB") served Hawkins with this civil complaint.[1] Citibank SD alleged that the debt amounted to $12,946.49. (*Id.* at ¶ 17.)

On May 12, 2008, the District Court entered a judgment awarding Citibank SD the full $12,946.49 plus costs and attorney's fees.[2] (Mem. in Support of Mot. of Def. Citicorp Credit Services, Inc. (USA) to Dismiss Am. Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) ("CCSI Mem."), Ex. D.) This judgment included money owed on interest charged in excess of seven percent. (*See* Am. Complaint at ¶ 17.) The judgment was affirmed on appeal, and the Maryland Court of Appeals denied Hawkins' Petition for Writ of Certiorari. (CCSI Mem., Ex. A, Ex. F.)

After the Maryland Court of Appeals denied certiorari, Hawkins, by his wife and next friend Ida Hawkins,[3] filed a Class Action Complaint ("Original Complaint") against CCSI and MPEB in the Circuit Court for Baltimore County. Defendants removed this case to this Court. The Original Complaint alleged that CCSI and MPEB violated the federal Fair Debt Collection Practices Act ("FDCPA") and the Maryland Consumer Debt Collection Act ("MCDCA") by seeking to collect interest from Hawkins in excess of the maximum rate permitted by South Dakota state law, which governed the rates charged on Hawkins' credit card. (*See generally* Complaint.) After being served with motions to dismiss and a motion for Rule 11 sanctions pointing out that South Dakota law did not in fact cap interest rates for consumer credit cards

---

[1] CCSI, pursuant to a contractual agreement, assists Citibank SD collect debt owed to it. (*See* CCSI Mem., Ex. B.)
[2] This Court may appropriately take judicial notice of the state court judgment in analyzing Defendants' motions. *Cf. Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 216 (4th Cir. 2006) (citing *Andrews v. Daw,* 201 F.3d 521, 524 n.1 (4th Cir. 2000)) ("When entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact."); *Bes Enter., Inc. v. Natanzon*, 2006 WL 3498419, * 4 (D. Md. Dec. 6, 2006) (Bennett, J.) (citing *Papasan v. Allain,* 478 U.S. 265, 268 n.1 (1986)) ("This Court may take judicial notice of matters of public record . . . without converting a Rule 12(b)(6) motion.").
[3] Hawkins is allegedly "incompetent" and without "a duly appointed representative." (Am. Complaint at ¶ 5.)

like the one subject to the suit, Hawkins amended the Original Complaint. (*See* William A. Hawkins' Opp. to Citicorp Credit Serv., Inc.'s Mot. to Dismiss. ("Pl.'s CCSI Response").)

The Amended Complaint alleges that the $12,946.49 sought in the state adjudication included money owed on interest that exceeded seven percent. (Am. Complaint at ¶¶ 16–17.) It further alleges that the National Bank Act "establishes 7% as the maximum interest rate chargeable to credit cards issued by banks located in South Dakota and other states that do not fix interest rates on consumer credit cards." (*Id.* at ¶ 18.) The Amended Complaint includes two counts. Count One alleges CCSI and MPEB violated the FDCPA "in that their communications regarding the debt allegedly owed by Mr. Hawkins, and their similar communications to the Class, contained false information regarding interest charges, and formed part of an attempt to collect . . . sums that were not lawfully due under the contracts at issue and applicable law [the National Bank Act]." (*Id.* at ¶ 19–21.) Count Two alleges CCSI and MPEB violated the MCDCA by attempting to enforce a right they knew Citibank SD was not legally entitled to (interest in excess of seven percent). (*Id.* at ¶¶ 22–25.) Hawkins seeks, on behalf of himself and the class, disgorgement of profits CCSI and MPEB earned in their collection efforts, attorneys' fees, emotional distress damages under Maryland law, and any further relief this Court deems appropriate. (*Id.*)

In response to the Amended Complaint, CCSI and MPEB filed motions to dismiss. Additionally, CCSI filed a motion to impose Rule 11 sanctions against Hawkins and his counsel alleging that their interpretation of the National Bank Act is "frivolous and not warranted by existing law or precedent." (Mem. in Support of Mot. of Def. Citicorp Credit Services, Inc. (USA) for Sanctions ("CCSI Rule 11 Mem.") 2).

II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests only the legal sufficiency of the complaint. *E. Shore Mkt., Inc. v. J.D. Assoc. Ltd.*, 213 F.3d 175, 180 (4th Cir. 2000). In ruling on a Rule 12(b)(6) motion, a court must determine whether the complaint, if the facts asserted therein are true, "state[s] a claim to relief that is plausible on its face." *Aschcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). However, the court "need not accept the legal conclusions drawn from the facts." *E. Shore Mkt.*, 213 F.3d at 180.

III.

    a.  <u>Hawkins Fails to State Legally Sufficient Claims under the FDCPA and MCDCA</u>

The FDCPA prohibits a "debt collector" from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Such prohibited conduct includes "[t]he false representation of . . . the character, amount, or legal status of any debt[.]" 15 U.S.C. § 1692e(2)(A). The MCDCA prohibits collecting a debt by "[c]laim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist[.]" MD. CODE. ANN., COM. LAW § 14-202(8).

Hawkins alleges that CCSI and MPEB violated the FDCPA and MCDCA by collecting interest at a rate that violates the National Bank Act ("the Act"). The Act reads in part:

> Any association may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange, or other evidences of debt, interest at the rate allowed by the laws of the State, Territory, or District where the bank is located . . . except that where by the laws of any State a different rate is limited for banks organized under state laws, the rate so limited shall be allowed for associations organized or existing in any such State under title 62 of the

4

> Revised Statutes. *When no rate is fixed by the laws of the State . . . the bank may take, receive, reserve, or charge a rate not exceeding 7 per centum . . . .  See* 12 U.S.C. § 85 (emphasis added).

In light of the Act's purpose of allowing national banks to compete on an equal playing field with state banks, the Supreme Court has held that a state "fixes" rates—and therefore the Act's seven percent cap is inapplicable—even where the only limitation on interest rates is that established by a contract between the parties. *See Daggs v. Phoenix Nat'l Bank*, 177 U.S. 549, 555 (1900) (citing *Tiffany v. Nat'l Bank of Mo.*, 85 U.S. 409 (1873)) (where state law allowed parties to contract for any rate of interest, holding that state law "fixed" the interest rate); *see also Hiatt v. San Francisco Nat'l Bank*, 361 F.2d 504, 506–07 (1966); *Keresey v. Nev. Nat'l Bank*, 646 P.2d 1224, 1225 (Nev. 1982). In so holding, the Court noted that the Act allows "[a] national bank [to] charge interest at the rate *allowed* by the laws of the state or territory where it is located." *See Daggs*, 177 U.S. at 555 (emphasis in original); *accord Hiatt*, 361 F.2d at 506; *Comm'r of Small Loans v. First Nat'l Bank of Md.*, 300 A.2d 685, 691 (Md. 1973).

Hawkins contends that South Dakota does not "fix" a rate because it exempts "regulated lenders," such as Citibank SD, from *all* interest rate limitations *even* in the absence of contractually established limits, and therefore credit cards issued by "regulated lenders" and governed by South Dakota law are subject to the Act's seven percent interest rate cap. (William A. Hawkins Response in Opp. to Margolis, Pritzker, Epstein, & Blatt, P.A.'s Mot. to Dismiss Amend. Complaint ("Pl.'s MPEB Response") 4.). Section 54-3-1.1 of the South Dakota Codified Laws provides that: "Unless a maximum interest rate or charge is specifically established elsewhere in the code, there is no maximum interest rate or charge, or usury restriction between or among persons, corporations . . . or any other entities if they established the interest rate or

charge by written agreement." S.D. CODIFIED LAWS § 54-3-1.1. However, Section 54-3-13 states: "Regulated lenders are exempt from all limitations on the rate of interest which they may charge and are further exempt from the operation and effect of all usury statutes, except as provided in § 54-3-14." S.D. CODIFIED LAWS § 54-3-13. Hawkins reads Section 54-3-13 to negate Section 54-3-1.1's applicability to "regulated lenders," thereby exempting them from any limits even in the absence of contractually established limits. Hawkins argues that if Section 54-3-13 does not negate Section 54-3-1.1's applicability to "regulated lenders," Section 54-3-13 would be superfluous because Section 54-3-13 already eliminates statutory caps where a rate is established through contract of the parties. [4] (Pl.'s CCSI Response at 7.)

There is some merit to Hawkins' assertion that Section 54-3-13 would be superfluous but for such an interpretation. However, Hawkins' interpretation would result in "regulated lenders" being able to charge any rate whatsoever even in the absence of the borrower agreeing to that rate in a contract. Without any South Dakota case law support cited by Hawkins, this Court is reluctant to subscribe to an interpretation of state law that would lead to such a result. Rather, despite the superfluity it creates, it seems more sensible to interpret Section 54-3-13 as simply re-affirming the proposition that "regulated lenders," such as Citibank SD, may contract for any rate of interest without concern for South Dakota rate caps.

In any event, this Court need not decide this issue of state law because even accepting *arguendo* that Hawkins' construction is correct, South Dakota still "fixes" a rate under the Act. CCSI correctly points out that the "fundamental proposition" in *Tiffany* and *Daggs* is that the Act

---

[4] There appears to be a contradiction in CCSI's Reply. At one point, CCSI states, "[p]laintiff does not, and cannot, allege that interest was charged contrary to [the cardholder agreement]." (Reply in Support of Motion of Def. Citicorp Credit Services, Inc. ("CCSI Reply") 2.) Later, CCSI states, "[plaintiff] cannot dispute that he was charged more than what is permitted by his agreement." (*Id.* at 5.) This Court assumes that the latter statement is in error, and that CCSI meant to re-iterate its point that Hawkins was *not* charged interest in excess of the cardholder agreement.

places national banks "on equal footing with state lending institutions." *See Fisher v. First Nat'l Bank of Omaha*, 548 F.2d 255, 259–61 (8th Cir. 1977); *Hiatt*, 361 F.2d at 506–07; *Keresey*, 646 P.2d at 1225; *Comm'r of Small Loans*, 300 A.2d at 688–89. To hold that the Act limits national banks covered by South Dakota law to charging seven percent interest, even when South Dakota permits all "regulated lenders" to charge any interest rate they choose, would directly contradict that proposition. In fact, consistent with this understanding of the Act's purpose, *Daggs* appears to essentially read the word "fixed" out of the Act by construing the relevant clause to mean that interest rates are capped at seven percent only when no interest rate is *allowed by* the laws of the state.[5] *Daggs*, 177 U.S. at 555. South Dakota law, under Hawkins' interpretation, *allows* banks to charge an unlimited interest rate. Therefore, just as a state "fixes" a rate by allowing parties to contract at any rate they wish, South Dakota would still "fix" a rate if it allowed "regulated lenders" to charge any interest rate even in the absence of a contractual agreement.

Because South Dakota "fixes" an interest rate, Hawkins' Citibank SD card is not subject to a seven percent interest rate cap under the National Bank Act. As a result, Hawkins' claim under the FDCPA—that CCSI or MPEB made a "false representation of the character, amount,

---

[5] The *Daggs* Court wrote:
> The meaning of these provisions is unmistakable. A national bank may charge interest at the rate *allowed* by the laws of the state or territory where it is located; and equality is carefully secured with local banks.
>
> The clear meaning and purpose of these provisions remove the ambiguity of those which follow, if there is any ambiguity. "When no rate is *fixed* by the laws of the state or territory or district, the bank may take, receive, reserve, or charge a rate not exceeding 7 per centum." "*Fixed by the laws*" must be construed to mean "*allowed by the laws*," not a rate expressed in the laws. In instances it might be that, but not necessarily. The intention of the national law is to adopt the state law, and permit to national banks what the state law allows to its citizens and to the banks organized by it. *Daggs*, 177 U.S. at 555 (quoting *Tiffany*, 85 U.S.) (emphasis in original).

7

or legal status of [a] debt"—fails as a matter of law. Similarly, Hawkins' claim under the MCDCA—that CCSI or MPEB "attempt[ed] . . . to enforce a right with knowledge that the right does not exist"—fails as a matter of law.

### b.  Alternatively, Hawkins' Claims Are Precluded by the Prior Judgment

*Res judicata* prevents a plaintiff from bringing a claim that was decided or could have been decided in a previous suit. *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008); *Anne Arundel County Bd. of Educ. v. Norville*, 887 A.2d 1029, 1037 (Md. 2005). Whether a state court's judgment precludes a federal court from hearing a claim is generally determined by the law of the state in which the first judgment was rendered. *Laurel Sand & Gravel*, 519 F.3d at 162.

"Under Maryland law, the requirements of *res judicata* . . . are: 1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute; 2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and 3) that there was a final judgment on the merits." *Sheahy v. Primus Auto. Fin. Serv. Inc.*, 284 F. Supp. 2d 278, 280 (D. Md. 2003); *accord Laurel Sand & Gravel*, 519 F.3d at 162; *Norville*, 887 A.2d at 1037. The purpose of *res judicata* is to "protect 'litigants from the burden of relitigating an identical issue with the same party or his privy and to promote judicial economy by preventing needless litigation.'" *Laurel Sand & Gravel*, 519 F.3d at 161–62 (quoting *Parklane Hosiery Co. v. Shore,* 439 U.S. 322 (1979)); *accord Norville*, 887 A.2d at 1037.

Hawkins' claims satisfy these elements of *res judicata*. First, the state adjudication was a final judgment on the merits: it resulted in a judgment against Hawkins regarding the deficiency

amount. Second, all parties in this action were party to the state adjudication or are in privity with the parties to that adjudication (and Hawkins does not appear to expressly contend otherwise). Hawkins was a party to both suits. *See Sheahy*, 284 F. Supp. 2d at 280–81 (holding that privity existed in a class action when lead plaintiff was the defendant in the prior adjudication). MPEB is in privity with Citibank SD. *See id.* (holding that a law firm sued for representing a creditor in a debt collection action was in privity with client-creditor). Finally, CCSI is in privity with Citibank SD because CCSI represents similar interests and legal rights to the underlying debt as its corporate affiliate Citibank SD.[6] *See FWB Bank v. Richman*, 731 A.2d , 916, 930 (Md. 1999) (internal citations and quotations omitted) ("Privity in the res judicata sense generally involves a person so identified in interest with another that he represents the same legal right.").

Third, whether claims are "identical" for *res judicata* purposes is determined by the transactional test:  do they "arise[] out of the same transaction or series of transactions"? *Laurel Sand & Gravel*, 519 F.3d at 162; *accord Long v. Burson*, 957 A.2d 173, 187 n.16 (Md. 2008); *Sheahy*, 284 F. Supp. 2d at 281 (holding that when "the basis of the earlier suit was that [the plaintiff] had had defaulted on a promissory note", and the claim in the instant action is "whether that promissory note was valid", the transaction test is met). In other words, even if a claim or defenses was not asserted in the first action, it may be precluded if it arose from the same series of transactions as the claim that was adjudicated. *Long*, 957 A.2d at 187 n.16. In this case, the state adjudication concluded that Hawkins owed a valid debt to Citibank SD, whereas Hawkins'

---

[6] Additionally, Maryland "has relaxed somewhat the strict requirements of privity and mutuality . . . in situations where the plaintiff had a full and fair opportunity to litigate the same claim in the prior proceeding. In these instances, a defendant not in privity with a defendant to the first suit may invoke the defense of res judicata[.]" *DeLeon v. Slear*, 616 A.2d 380, 389 n.5 (Md. 1992); *accord Green v. Ford Motor Credit Co.*, 828 A.2d 821, 838 (Md. Ct. Spec. App. 2003) ("[T]he requirement that one who invokes *res judicata* . . . be a party or in privity to a party has been relaxed and would not bar [*res judicata*] if all other elements of [the doctrine] were proven.").

claim in the Amended Complaint is that the same debt was illegal to the extent it charged interest over seven percent.

However, since counterclaims are permissive rather than mandatory under Maryland law, where a defendant could have brought a counterclaim in the first action but failed to do so, he is not precluded from bringing that claim in a subsequent action unless "successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action." *Sheahy*, 284 F. Supp. 2d at 282 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 22(2) (1982)); *accord Moore v. Nissan Motor Acceptance Corp.*, 831 A.2d 12, 16–17 (Md. 2003). The question is "whether the allegations in a new suit, 'if proven to be true, would negate, contradict, and in that sense nullify an essential foundation for the earlier . . . judgment.'" *Sheahy*, 284 F. Supp. 2d at 282–83 (quoting *Green*, 828 A.2d at 830). This test is narrower than the transaction test. *See Moore*, 831 A.2d at 16 (quoting RESTATEMENT § 22(2)(B) cmt. F).

Generally, the subsequent action will only be precluded if "the prior action had eventuated in a judgment for plaintiff since only in such a case would there be the threat of nullification of the judgment or impairment of rights[.]" *Sheahy*, 284 F. Supp. 2d at 282 (quoting RESTATEMENT § 22(2)(B) cmt. F); *see also Moore*, 831 A.2d at 17 (holding that debtor was not prevented from raising a claim based facts that had served as a *successful* defense against creditor's previous suit to recover the debt). Examples of subsequent judgments "nullifying" or "impairing rights established" in the initial action include "allowing the defendant to enjoin enforcement of the previous judgment, or to recover on a restitution theory of the amount paid pursuant to the judgment . . . or by depriving the plaintiff in the first action of property rights vested in him under the first judgment." *Rowland v. Harrison*, 577 A.2d 51, 57–58 (Md. 1990).

In *Sheahy v. Primus Auto. Fin. Serv. Inc.*, a Maryland state court had issued a default judgment against a debtor for a deficiency on an auto loan. 284 F. Supp. 2d at 279–80. The debtor subsequently filed a suit in this Court alleging, among other things, that the creditor and its law firm violated the FDCPA and MCDCA in collecting that debt. *Id.* at 280. This Court held *res judicata* barred the debtor's claims, which could have been brought as counterclaims in the state action, because they would "negate, contradict, and nullify the [prior] default judgment." *Id.* at 283. Some of the claims were barred because they expressly challenged the validity of the prior judgment. One claim, however, did not explicitly seek to void the prior judgment, but "implicitly [sought] to void the default judgment by requesting [damages in] the amount of the deficiency owed to [the creditor]." *Id.* at 283 n.5.

In *Rowland v. Harrison*, a veterinarian sued a horse's owner for breach of contract to recover the horse's medical costs. 577 A.2d at 51–52. The owner argued that the vet's negligence excused the owner from honoring the contract and counterclaimed for malpractice against the vet. *Id.* at 52, 54. Because the owner had inadequate time for discovery on the malpractice claim, the trial court dismissed that counterclaim *without prejudice* at the conclusion of a bench trial. *Id.* at 53. The vet prevailed on the breach of contract claim, because, as the trial court stated "his decision was 'strictly on the debt due,' and that it did not 'deal with a question of whether or not there was negligence, because there is just not evidence here sufficient to make that kind of determination.'" *Id.* The owner subsequently initiated a new action against the vet for malpractice. The Maryland Court of Appeals held that the malpractice action was not barred because it would not nullify the prior judgment. *Id.* at 57. The court explained, "[i]t is one thing to say that a successful assertion of a defense of negligence would have defeated the debt action, and quite another to say that a successful prosecution of the malpractice action would nullify the

11

enrolled judgment in the debt action." *Id.* The court noted, however, that the owner "could not recover the fees paid for the treatment of the horse" because that would amount to restitution for the previous judgment. *Id.* at 58.

Hawkins suit, if successful, would directly "contradict" the state judgment that Hawkins owed Citibank SD interest in excess of seven percent. Hawkins cannot avoid *res judicata* simply by carefully drafting a complaint to avoid explicitly asking this Court to void or nullify the prior judgment. The *Sheahy* plaintiff *implicitly* sought to nullify a prior deficiency judgment by asserting that his liability for the debt was contrary to law and seeking damages in the amount of the prior judgment. Similarly, Hawkins implicitly seeks to nullify a portion of the prior judgment by asserting that his liability for the debt was contrary to law and seeking damages for the efforts to collect that debt. A judgment in Hawkins' favor would *de facto* impair Citibank SD's rights under the state judgment by finding that Citibank SD was not legally entitled to interest above seven percent and requiring Citibank SD's corporate affiliate to compensate Hawkins for collecting it. Hawkins argues that suing for disgorgement and noneconomic damages is less offensive to the prior judgment than seeking restitution for the allegedly excessive interest. This is a distinction without a difference: either way, the Citigroup corporate complex would pay damages because the interest payments above seven percent were illegal. Furthermore, Hawkins' situation is distinguishable from *Rowland*, where the breach of contract judgment was not necessarily incompatible with success in the subsequent malpractice action. A judgment in Hawkins' favor, on the other hand, is necessarily incompatible with the prior judgment that

Hawkins owed interest over seven percent.[7] In sum, regardless of how carefully Hawkins drafted the Amended Complaint, rendering judgment in his favor would "negate, contradict, and in that sense nullify an essential foundation" of the state judgment, and therefore this action is barred.[8]

IV.

CCSI urges this court to impose Rule 11 sanctions against Hawkins and his counsel for claiming that Citibank SD was limited to charging seven percent interest under the Act. CCSI contends that this interpretation of the Act is "frivolous and not warranted by existing law or precedent" and "repeatedly has been rejected by the courts." (CCSI Rule 11 Mem. at 2).

Federal Rule of Civil Procedure 11(b)(2) reads:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.] FED. R. CIV. P. 11(b)(2).

A claim "fails to satisfy Rule 11(b)(2) when . . . 'a reasonable attorney in like circumstances could not have believed his actions to be legally justified.'" *Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 277 (4th Cir. 2006) (quoting *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002)). However, mere failure to survive a motion to dismiss does not necessarily support sanctions. *Hunter*, 281 F.3d at 153. Rather, "[t]he legal argument must have

---

[7] Additionally, allowing Hawkins to proceed with these claims would undermine judicial economy. Although Maryland law is not so concerned about judicial economy that it has adopted a compulsory counterclaim rule, Maryland's permissive counterclaim rules and *res judicata* doctrine at least disfavor the waste of judicial resources.

[8] CCSI puts forward other arguments, not addressed in this opinion, for dismissal in its 12(b)(6) motion. Because the Amended Complaint can be dismissed on either of the two grounds discussed in Section III, this Court need not reach the merits of CCSI's other arguments.

13

absolutely no chance of success under existing precedent." *Morris*, 448 F.3d at 277 (quoting *Hunter*, 281 F.3d at 153) (internal quotations omitted).

Hawkins' claims do not warrant sanctions. The Supreme Court has held—in light of the Act's purpose of establishing parity between state and national banks—that state law "fixes" a rate when it permits parties to contractually agree on any rate. *See Daggs*, 177 U.S. at 554–56. The Court further explained that it read "fixed" to mean "allowed." *See id.* In light of this precedent, success on Hawkins' claims was unlikely. Nonetheless, Hawkins made a good faith argument that South Dakota law—by failing to even limit rates charged to those established by contract—is distinguishable from the state law at issue in *Daggs*. (*See* Pl.'s CCSI Response at 7–8.) Although success on this theory required an excessively narrow reading of *Daggs* and a questionable interpretation of South Dakota law, this theory was not so egregiously contrary to precedent that it had "absolutely no chance of success." Moreover, the relevant Supreme Court reasoning is over one-hundred years old. Although its basic holding and much of its reasoning has been reaffirmed by a number of courts, none of those courts are controlling in this jurisdiction. Furthermore, the ambiguity in the plain language of the Act, particularly the meaning of the word "fixed," weighs against imposing sanctions for an inaccurate construction of the Act. In fact, in *Hiatt*, the Ninth Circuit noted that an interpretation of the Act that contradicted the holding of *Daggs* was, though erroneous, nonetheless "technically forceful." 361 F.2d at 506. In short, Hawkins' argument was not so frivolous that a "reasonable attorney in like circumstances could not have believed his actions to be legally justified." CCSI's motion to impose Rule 11 sanctions is therefore denied.

DATE: 10/23/2009                                        /s/
                                              J. Frederick Motz
                                              United States District Judge

15